[No. 4677.   Decided October 13, 1903.]

E. D. HOPKINS *et al.*, *Respondents*, v. INTERNATIONAL LUMBER COMPANY, *Appellant.*[1]

APPEAL—REVIEW—EVIDENCE—HARMLESS ERROR. Error in the admission of evidence in a law action tried by the court without a jury is harmless, as the supreme court tries the case *de novo* on appeal, and will disregard such testimony.

ACTIONS—DEMAND BEFORE SUIT—SALES. In an action for a balance due for lumber sold and delivered, a demand before suit only affects costs, and where it would have availed nothing, commencing suit is a sufficient demand.

CONTRACTS—SALES—FURNISHING ESTIMATES—ESTOPPEL. Upon a contract for the sale of lumber stipulating that the plaintiffs should furnish the same upon the estimates of the defendant's engineer, the defendant is estopped to assert that no estimates were obtained from the engineer, where the defendant constantly furnished the estimates, received the lumber and made payments thereon, and where the engineer was exclusively under defendant's control and refused to furnish estimates to the plaintiff, stating that he furnished them to the defendant.

SAME—EVIDENCE—ADMISSIONS. In such case the defendant can not complain of a judgment for the contract price for the amount admitted to have been furnished under the contract, and estimated.

[1]Reported in 73 Pac. 1113.

Appeal from a judgment of the superior court for Spokane county, Prather, J., entered December 26, 1902, upon findings in favor of plaintiff after a trial on the merits by the court, a jury being waived, in an action upon contract for a balance due for lumber sold and delivered. Affirmed.

*A. G. Avery,* for appellant.

*Danson & Huneke,* for respondents.

PER CURIAM.—On the 28th of January, 1899, the plaintiffs and the defendant entered into a written contract, of which the following is a copy:

"This triplicate agreement, made and entered into this 28th day of January, A. D. 1899, by and between the International Lumber Company, a corporation, doing business under the laws of the State of Idaho, party of the first part, and Hopkins & Reed, of Spokane county, Washington, parties of the second part:

"Witnesseth: That whereas, the party of the first part is now engaged in performing a contract to furnish timber for bridge building for the Kootenai Valley, Bedlington and Northern Railway Company, in the performance of which work said party of the first part requires certain timber and lumber hereinafter mentioned, and has agreed to purchase the same from the parties of the second part, and the said parties of the second part have agreed to furnish the same.

"Now, therefore, in consideration of the mutual agreements and covenants hereinafter contained, the parties of the second part agree to furnish to the party of the first part all the native sawed timber for trestle bridges and foundations required by said party of the first part, with the exception of such coast timber and hewed timber as may be required by the party of the first part for the building of truss or trestle bridges, said sawed timber to be furnished by the parties of the second part at such times and in such quantities, sizes and dimensions as required by said party of the first part.

"The parties of the second part agree to begin operations

and to furnish said timber at the rate of twenty thousand feet (20,000) per day within ten days from the date thereof, and to deliver the timber required for the bridge crossing the Kootenai River at the bridge site for said bridge and deliver the balance of the timber to be furnished under this contract either on cars f. o. b. with reasonable facilities for loading on the line of said Kootenai Valley, Bedlington and Northern Railway Company, or at the bank of said Kootenai River at a point to be designated by said party of the first part within one-fourth mile from the present mill site of said party of the first part, said party of the first part to have the right to designate whether said delivery shall be made on cars or at river bank as aforesaid.

"The party of the first part agrees to pay parties of the second part for said timber the following prices, to wit: Seven dollars per thousand feet board measure, for timber from twelve to twenty-four feet; seven and 50-100 dollars per thousand feet, board measure, for timber twenty-six to thirty-two feet long; and seven and 50-100 dollars for bridge ties, surfaced or sized on one side. All of said timber to be properly sawed on four sides, of uniform thickness and free from wane, good, sound, live timber, and in all respects conformable with the requirements of the engineer in charge of said work for said Kootenai Valley, Bedlington and Northern Railway Company. The measurements of said timber to be determined by and the payments therefor to be made on the basis of the estimates made by the chief engineer in charge of said work for said Kootenai Valley, Bedlington and Northern Railway Company or his assistants. The party of the first part agrees to pay for said timbers and the parties of the second part agree to accept payment therefor, upon the following terms, to wit: The said timber to be estimated and accepted in the usual manner by the said chief engineer or his assistants on the last day of each month (said estimates being the estimates of the timber furnished for said party of the first part, by said parties of the second part, as the basis of their payment therefor.)

"That upon the said estimate and acceptance by said engineer, the party of the first part agrees to pay parties of the second part on the 20th day of the month following said estimate, the amount due at the price hereinbefore named, less ten per cent thereof, which amount party of the first part is to retain until sixty days after the completion of this contract, and which said sum retained, the party of the first part agrees to pay to the parties of the second part within sixty days after the completion thereof.

"It is understood that if the parties of the second part fail to fulfill the terms hereof, that then and in that event the party of the first part, upon giving five days' written notice to parties of the second part, the party of the first part shall have the right to go into the open market and purchase such timber as shall be required by it to carry on its work under said contract at a price not to exceed fifteen per cent in advance of the prices herein provided for, and that such sum as it shall expend in such purchase shall be charged to the parties of the second part and deducted from the amount due or to become due under this contract from said party of the first part.

"It is further agreed that in case the party of the first part shall require more timber for the carrying on of its contract than the parties of the second part shall be able to furnish under the terms hereof that the party of the first part may purchase without in any way affecting the terms of this contract.

"It is further understood and agreed by and between the parties hereto, that this agreement shall cease to be binding upon the parties of the first part when said party of the first part shall have completed its contract with Porter Brothers for work on the line of said Kootenai Valley, Bedlington and Northern Railway Company.

"It is further agreed that as part consideration for this contract, the party of the first part hereby demises and leases to parties of the second part its entire saw mill plant, planer, blacksmith shop, boarding house and cooking utensils from this date until the 1st day of January, 1900; and in case this contract shall not be completed prior to

the first day of December, 1899, then this lease is hereby extended until the expiration of thirty days after the completion of said contract.

"It is hereby agreed by and between the parties hereto, that said parties of the second part shall have the right during the term of this lease to saw logs into other timber than for railroad timber as provided in this contract, and that for such logs sawed other than herein provided for in this contract, said parties of the second part shall pay to the said party of the first part for the use of said property, the sum of one dollar ($1.00) per thousand, board measure, and for all such lumber so sawed which shall be planed, the sum of fifty cents per thousand, board measure, it being understood and agreed that parties of the second part shall pay nothing for the use of said property in sawing said railroad timber; nor for sawing and planing the side timber taken from the railroad timber, it being agreed and understood that all logs from which railroad timber shall be sawed shall be used as far as possible in making railroad timber, it being further agreed and understood that the party of the first part reserves for its own use, the north room in the front end of the said boarding house.

"And it is further agreed by and between the parties hereto, that at the expiration of said lease, the parties of the second part will surrender possession of said saw mill and other property in as good condition as when received, except natural wear and tear, and damage by fire, the elements and unavoidable casualties, and that during the life of said lease, said parties of the second part agree to use reasonable care in the management and operation of said property.

"It is further agreed by and between the parties hereto, that any necessary machinery which said parties of the second part may put into said saw mill plant during the life of this lease, that at the expiration thereof, the said party of the first part shall purchase the same at its reasonable value, said value to be determined by two parties, one to be selected by the party of the first part, and one

to be selected by the parties of the second part, and in case said two parties cannot agree, said two parties to select a third party, and said three parties shall then determine the value of said machinery.

"It is further agreed that the party of the first part shall have the right at any time to inspect and examine said mill property. It is further agreed by and between the parties hereto that said parties of the second part shall purchase logs to be sawed as hereinbefore provided for as soon as practicable, same to be paid for on the 20th day of the month following said purchase, the total purchase for the first two months not to exceed two million feet, and said first party hereby agrees to advance to said second parties on the 20th day of March, and the 20th day of April, 1899, a sufficient amount to pay for said logs not to exceed three and 50-100 dollars per thousand scale measure.

"And it is further agreed that out of the first estimates received as hereinbefore provided for said second parties shall receive from said first party a sufficient amount to pay the running expenses of sawing all bridge timber, not to exceed two dollars per thousand, board measure, less all sums which said second parties shall have received for side timber or other timber sold.

"It is hereby agreed by and between the parties hereto that from the estimate payable on May 20th, 1899, said party of the first part shall retain all money which it shall have advanced to the parties of the second part herein under the terms of this agreement.

"In witness whereof, the parties have hereunto subscribed their names and affixed their seals the day and year first above written.

"International Lumber Company, Ltd.
"By W. L. O'Connell,     (Seal)
"Secretary and Manager."
"E. D. Hopkins,     (Seal)
"F. A. Reed,     (Seal)"

Immediately after the execution of said contract, the plaintiffs entered upon the execution thereof and continued

to manufacture and deliver lumber in pursuance of the
same until on or about the 3d day of January, 1900, when
the work was completed.   Various sums had been paid
by the defendant to the plaintiffs, and this action was
brought on February 21, 1900, to recover an alleged bal-
ance of $3,142.26.   The complaint alleges that, in addi-
tion to the lumber and timber furnished in pursuance of
said contract, in the summer of 1899, under and in pursu-
ance of an oral agreement, the plaintiffs furnished to the
defendant certain other lumber, which was not contem-
plated by the written contract, and that that part of said
written contract requiring plaintiffs to furnish timber for
road construction north of the international boundary line
between the United States and British Columbia, was, by
mutual consent, waived.   The answer of the defendant de-
nies the waiver of any portion of said written contract,
denies the making of any oral contract, and claims that
all of the lumber furnished was intended to be, and was,
furnished under and in pursuance of the written contract,
alleges payment, and contains a counterclaim for damages
for failure to comply with the conditions of the written
contract.   The cause went to trial before the court, a jury
being waived, and after a long and tedious trial the court
made its findings of fact and conclusions of law in favor
of the plaintiffs, and rendered judgment against defend-
ant for $2,597.69 with interest and costs.   Defendant
appeals.

The principal question for determination by this court
are questions of fact.   The appellant excepted to the find-
ings of fact and conclusions of law, and assigns as error
the ruling of the court in that respect.   The main conten-
tions of the appellant are with reference to the alleged
waivers of portions of the provisions of the contract, and

that no estimates had been obtained from the engineer, which latter was a condition precedent to any amounts coming due under the contract. Appellant devotes considerable space in its brief to the question of erroneously admitted evidence; but, even if error in that respect were committed, it would not warrant a reversal of the judgment. This court must try the case *de novo,* and, if it finds that any evidence has been improperly admitted, it will simply disregard such evidence.

It is claimed by the appellant that this action was prematurely brought, that there had never been a demand upon it for the amount of the claims, and that it had never had an opportunity to settle. The testimony is somewhat conflicting on this point. However, the commencement of an action is, in our opinion, a sufficient demand. The only necessity of the demand is to enable the debtor to settle without being subjected to unnecessary costs. It is apparent in this case that it would not have availed the respondents anything if a demand had been made before the commencement of the action.

The court found that estimates had been furnished for all of that timber delivered in pursuance of the written contract, and a considerable portion of appellant's brief is devoted to a discussion of this question, appellant insisting that estimates had not been obtained. It seems from the testimony that applications had been made by respondents to the engineer for estimates, and he refused to furnish them, saying that respondents would have to look to appellants for the estimates, as he furnished the estimates to it. We have failed to find anywhere in the record that any estimates were furnished by the engineer direct to the respondents. On the contrary, appellant constantly furnished estimates to the respondents and made payments

upon those estimates, and it seems to us that, even if these estimates—which were furnished by the appellant and upon which payments were from time to time made—were in reality not the estimates of the engineer, the appellant ought not to be permitted to take advantage of that fact at this time and avoid a recovery; nor should it do so for the further reason that it was exclusively within the power of the appellant to procure the engineer's estimates. It is not denied by the appellant that it received all the timber for which payment is demanded; but it is insisted that appellant is not liable for the amount thereof under the terms of the contract, unless the engineer furnished estimates for the same.  It seems to us that the evidence clearly shows that both parties adopted the estimates as the engineers' estimates—at least, that the appellant led the respondents to believe that it was furnishing engineer's estimates—and, as it alone had the power to do so, it is estopped to deny that it did so furnish them.

Exhibit 1, which, under the circumstances of the case, we think was properly admitted, is what might be termed a summary of the whole lumber transaction, and is a final estimate, the first line of which reads, "Timber as per engineer's estimate 1,533,411 ft."  Under the contract appellant had power to, and did, purchase timber from other parties.  It was included in this estimate, and the appellant itself segregated the items, and gave Hopkins & Reed credit for 943,416 feet thereof.  The court rendered judgment for 964,398, or about 21,000 feet more than the appellant shows was the engineer's estimate.  This 21,000 feet was made up of timber that went into false work, not included in the written contract, and some that was permitted by the appellant to float away and be lost, neither of which was included in the estimate.  There were four

causes of action in the complaint, only the first of which called for lumber under the contract, appellant insisting that all of the timber, etc., was intended to have been furnished under the contract. But, be that as it may, the final estimate (Exhibit 1) admits that all of the timber furnished, except the 21,000 feet, was furnished under the contract, and was estimated, and, as appellant is not required to pay any greater sum for that which the respondents claim was not furnished under the written contract, it certainly has no cause to complain in so far as the 943,416 feet is concerned.

There are various other questions involving minor amounts, but we are satisfied that there is sufficient testimony to support the findings of fact, and that the findings support the conclusions of law. The judgment should be affirmed.